PIETSCH, Respondent, vs. WEGWART and another, Appellants.

*October 10—November 8, 1922.*

*Limitation of actions: Fraud of director of corporation: Who may bring action: Director as trustee: When action accrues: Actions solely cognizable in chancery: What limitation applicable.*

1. In an action of accounting, W., one of the defendants, filed a cross-complaint against C., another defendant, alleging that C., while a director of a corporation, fraudulently appropriated moneys of the corporation, and the evidence showed that W. had purchased all the corporate stock, paid all its obligations, and that the corporation had been dissolved. This court is inclined to believe that the action set forth in the cross-complaint belongs to the corporation, which alone is authorized to take advantage of it; yet in any view of the case, W. stands in no different relation than if the cross-complaint had been interposed by the corporation.

2. Unless a cause of action based on fraud comes within sub. (7) of sec. 4222, Stats., the statute of limitations begins to run from the time of the commission of the fraud, sub. (4), sec. 4221, providing a limitation of ten years, referring to actions cognizable by a court of chancery, whether exclusive or not, when no other limitation is provided, and all actions of fraud being subject to sub. (3), sec. 4222, providing a six-year limitation, except those coming under sub. (7), sec. 4222, which embraces actions in fraud solely cognizable in chancery before the adoption of the Code.

3. The action set forth in the cross-complaint being based on fraud is governed by sub. (3), sec. 4222, Stats., unless it falls within the exception of sub. (7), sec. 4222; but being one in which equity and law have concurrent jurisdiction, it does not come within sub. (7), sec. 4222, and only sub. (3) of that section is applicable.

4. Officers and directors of a corporation are not trustees of an express trust, and if they are guilty of misfeasance or malfeasance the corporation may bring an action at law to enforce any violation of duty.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

This is an appeal by the defendants *Wegwart* and *Badger Basket & Veneer Company* from that part of the judgment dismissing the cross-complaint of such defendants.

It appears from the complaint and from the findings of the referee that the defendants *Wegwart* and Conant had been engaged in a number of joint ventures, and, among other things, owned as tenants in common a certain plantation known as the Goshen Plantation, in the state of Louisiana; that they also operated on said plantation a sawmill, and were also jointly engaged in a logging and lumber business conducted on said plantation; that they were the principal owners of the stock of the defendant *Badger Basket & Veneer Company* at Burlington, Wisconsin, a Wisconsin corporation, and that the corporation was a heavy borrower from the Bank of Burlington, and that to secure such bank Conant and *Wegwart*, by deed absolute on

its face, conveyed such plantation to the bank; that thereafter, at the instigation of Conant and *Wegwart*, the bank conveyed said plantation to one Camper, who in turn transferred to the bank, in the place of the Goshen Plantation, a certain property known as the Forest Avenue Hotel, situated in the city of Fond du Lac, Wisconsin; that thereafter the bank sold said hotel property; that in the transfer of the Goshen Plantation the sawmill and the logging and lumber business were not included, and that Conant transferred his interest in such mill and logging and lumber business to *Wegwart* for a stipulated sum which *Wegwart* had refused to pay; that *Wegwart* collected all the rents and profits of and from such hotel property, for which he failed to account to Conant; that the interest of Conant in these various properties and enterprises was duly transferred to the plaintiff, and that the latter, as the owner thereof and as the successor of said Conant, in his prayer for relief in his complaint, among other things, prays that the amount of the loans made by said bank to said *Basket Company*, for which the bank held plaintiff's one-half interest of the hotel as security, be ascertained, and, after being so ascertained, that said *Basket Company* be required to pay said amount to said bank and exonerate the said one-half share and interest of the plaintiff in said hotel property; that the bank as trustee be required to set forth the trust under which it took and held said real estate and to properly account with reference to its trust, and that the rights of the plaintiff against the bank as trustee be ascertained and determined, and that the latter be required to account to the plaintiff and pay over to him the amount realized on one half of the personal property, furniture, and fixtures in said hotel property; that the court declare the transfer of the plantation and of the hotel property to the bank as a mortgage; and that *Wegwart* be required to account for all moneys collected by him as rents and profits while he had

charge of the collection of such rents and profits of said hotel property.

The defendant *Wegwart* filed a cross-complaint against the defendant Conant, in which, among other things, it is alleged that Conant and *Wegwart* were both stockholders and directors in a corporation known as the Woodland Lumber Company of South Milwaukee, Wisconsin, the latter company having an authorized capital stock of $25,000, consisting of 500 shares of the nominal par value of $50 a share; that said Woodland Lumber Company owned two tracts of timber lands in Warren county, Mississippi, one containing about 960 acres and the other about 560 acres; that said Conant, while a director of such corporation, falsely and fraudulently represented to said Woodland Lumber Company that the timber on said 960-acre tract of land was worth not to exceed $7,500, and that the timber on said 560-acre tract of land was worth not to exceed $1,108.50, and that he would sell said timber for the sums aforesaid; that the company, relying upon said representations, actually did make a transfer of said timber on said lands for the sums aforesaid, and that said Conant thereupon accounted to said company for such sums, but that in truth and in fact the amount received on the sale of the said 960-acre tract was not the sum of $7,500 but the sum of $14,720, and that the sum received for said 560-acre tract was not the sum of $1,108.50 but the sum of $2,250; that said Conant, in violation of his fiduciary obligations as a director of said company, appropriated to his own use moneys belonging to the corporation in the sum of $8,361.50.

In the cross-complaint an accounting is prayed for from the defendant Conant for the amount of moneys so misappropriated and for judgment for such amount, and for such other and further relief as to the court may appear just and equitable.

To the cross-complaint above referred to the defendant Conant in his answer, among other things, interposed as a defense the six-year statute of limitations.

The issues raised by the pleadings were referred to a court commissioner, and after a trial he in substance sustained the allegations in plaintiff's complaint, and in his conclusions of law, among other things, found that the plaintiff is entitled to judgment against the defendants *Wegwart* and *Badger Basket & Veneer Company* in the sum of $6,228.60, together with interest thereon at the rate of six per cent. per annum, computed from the 1st day of September, 1916, and ordered that the cross-complaint of the defendant *Wegwart* be dismissed upon its merits. Thereupon plaintiff moved for a confirmation of the referee's report and findings and for judgment thereon; and the defendant *Wegwart* moved to modify the referee's report and for judgment in his favor upon such modified report. The court thereupon granted the motion of the plaintiff and confirmed the findings and report of the referee and ordered judgment in favor of the plaintiff accordingly. Judgment was thereupon entered in favor of the plaintiff in accordance with the referee's report, and the cross-complaint of the defendant *Wegwart* was dismissed upon its merits.

For the appellants there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *A. J. Schmitz.*

For the respondent there was a brief by *Austin, Fehr, Mueller & Gehrz* of Milwaukee, and oral argument by *Arthur A. Mueller.*

DOERFLER, J.    If the defense of the statute of limitations interposed by the defendant Conant to the cross-complaint is sustained, then it becomes unnecessary to consider the merits of the controversy.    Counsel for *Wegwart* maintain that the action set forth in plaintiff's complaint is equitable and one which prior to February 28, 1857, was solely cognizable by a court of chancery.    It is admitted that

more than six years had elapsed between the time of the sales of the standing timber on the 960 and 560-acre tracts, but that at the time of the commencement of the action ten years had not yet elapsed.  It cannot be disputed that the cause of action set forth in the complaint is one purely equitable and of such a nature as prior to February 28, 1857, was solely cognizable by a court of chancery.  The statute of limitations, however, was not interposed to the complaint but to the cross-complaint, and the only question which arises on this defense is involved in the determination of whether or not the statute is applicable as pleaded to the cross-complaint.  It appears from the evidence that *Wegwart* purchased all the outstanding stock of the Woodland Lumber Company and paid all the obligations of said company, and that the company was dissolved about the year 1913, and that by reason of such facts *Wegwart* became and is the sole owner of all stock and property of the company and of all of the causes of action which formerly belonged to the company.  On the part of Conant it is claimed that the cause of action set forth in the cross-complaint properly belongs to the Woodland Lumber Company, and that such company alone is authorized to take advantage of such cause of action.

While we are inclined to the belief that *Wegwart's* contention in this connection is correct, nevertheless we are satisfied that in any view of the case *Wegwart's* claim is derived from the company, and that he is entitled to no other rights in his cross-complaint than the company would have possessed had *Wegwart* not succeeded to the rights of the company.  In other words, to determine whether the issue on the statute of limitations with respect to the nature of the cause of action set forth in the cross-complaint involves an action at law, or an action of which a court of law or a court of equity has concurrent jurisdiction, or an action which prior to the adoption of the Code was solely cognizable by a court of equity, the defendant *Wegwart* stands in

no different position than if such cross-complaint had been interposed by the company itself.

Is the cause of action set forth in the cross-complaint one which is embraced in sub. (7) of sec. 4222 of the Statutes?

Sec. 4219 of the Statutes provides:

"The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued: . . .

"Section 4221. *Within ten years.* . . . (4) An action which, on and before the twenty-eighth day of February in the year one thousand eight hundred and fifty-seven, was cognizable by the court of chancery, when no other limitation is prescribed in this chapter.

"Section 4222. . . . (3) An action upon any other contract, obligation or liability, express or implied, except those mentioned in the last two preceding sections. . . .

"(7) An action for relief on the ground of fraud in a case which was, on and before the twenty-eighth day of February, A. D. one thousand eight hundred and fifty-seven, cognizable solely by the court of chancery. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

A careful reading of sec. 4221 and particularly sub. (4) thereof, and of sec. 4222 and particularly sub. (3) and (7) thereof, would clearly indicate that unless the cause of action alleged in the cross-complaint be one that comes within the purview of sub. (7) of sec. 4222 of the Statutes, the statute begins to run from the commission of the alleged fraud and not from the time of the discovery of the same. Sub. (4), sec. 4221, in view of the other provisions of the limitation statutes, refers to any cause of action which prior to the adoption of the Code was cognizable by a court of chancery, whether such cause of action be one of which a court of chancery had exclusive jurisdiction or one of which it could take concurrent jurisdiction with a court of law; however, the subdivision of the section referred to

excepts therefrom actions in equity in which other limita-
tions are prescribed in the chapter. Note the last clause in
this subdivision (4): "When no other limitation is pre-
scribed in this chapter."

Sub. (3), sec. 4222, Stats., which embraces actions in
which the six-year statute of limitations is applicable, refers
to "an action upon any other contract, obligation or lia-
bility, express or implied, except those mentioned in the
last two preceding sections." The subdivision of the sec-
tion just referred to clearly includes the action of fraud in
all cases where the action is one purely at law, or an action
of which a court of equity would have concurrent juris-
diction.

Then comes sub. (7) of sec. 4222, and this last sub-
division constitutes an exception to sub. (3) of sec. 4222,
and embraces actions in fraud which before the adoption of
the Code were solely cognizable by a court of chancery, and
in such a cause of action, under such subdivision, the cause
of action is not deemed to have accrued until discovery by
the aggrieved party of the facts constituting the fraud.

Defendant *Wegwart* contends, among other things, that
the cross-complaint comes under sub. (7) of sec. 4222.
This contention has, in numerous cases decided by this
court, been ruled adversely to such defendant.

In *Pietsch v. Milbrath*, 123 Wis. 647, 101 N. W. 388,
102 N. W. 342, Mr. Justice MARSHALL in rendering the
opinion of the court, in speaking of sub. (7), sec. 4222,
says:

"That provides that a cause of action for relief on the
ground of fraud in a case which was on or before the 28th
day of February, 1857, cognizable in a court of chancery
shall not be deemed to have accrued until the discovery by
the aggrieved parties of the perpetration of the fraud.
Counsel for respondent argue that this action falls within
that because the sole remedy afforded plaintiffs to enforce
the right of the corporation was in equity and was so at the

time mentioned in such section. That overlooks the fact that the real test is, what remedy was afforded the corporation to enforce its rights in the circumstances set forth in the complaint before the adoption of the Code. We need spend no time to demonstrate that it had then, as it has now, a remedy at law in such cases. · It follows that before this action was commenced a cause of action of the corporation was extinguished and that with it necessarily the right of the plaintiffs to enforce such cause of action was lost."

In *State v. C. & N. W. R. Co.* 132 Wis. 345, 112 N. W. 515, in which the complaint alleged that the· defendant railway company made false and fraudulent returns of its gross earnings and in which discovery and accounting were prayed for and judgment for the amount found due over and above the sums actually paid, the court, on page 361 of the opinion, rendered by the late Mr. Chief Justice SIE-BECKER, used this language:

"Were this claim of the plaintiff well founded in fact, still no exemption from the operation of the statute would exist under the provisions of the statutes of limitation. The limitations prescribed have been held applicable to all actions, and the presence of fraud in no instance postpones the running of the statute from the time the cause of action accrued, save the specified exception in sub. 7, sec. 4222, Stats. 1898, for relief on the ground of fraud in cases which before February 28, 1857, were cognizable solely by the courts of chancery. As we have heretofore indicated, this cause is of that class wherein a liability which is legal in its nature and has been created by statute is sought to be enforced, and would come within the jurisdiction of law but for the fact that the remedy therein does not afford as complete, sufficient, and adequate a remedy as that afforded by the equitable action for an accounting and discovery. It is therefore not within the exception of sub. 7 of the limitation statute, and hence the statute commenced to run against the cause of action from the time the right of action accrued."

The court then cites *Jacobs v. Frederick,* 81 Wis. 254, 51 N. W. 320; *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W.

388, 102 N. W. 342; *Boyd v. Mut. Fire Asso.* 116 Wis.
155, 90 N. W. 1086, 94 N. W. 171; *Hoffmann v. Milwau-*
*kee E. R. & L. Co.* 127 Wis. 76, 106 N. W. 808; and *Mason*
*v. Henry,* 152 N. Y. 529, 46 N. E. 837.

*Jacobs v. Frederick,* 81 Wis. 254, 51 N. W. 320, which
is the first case on the subject reported in our Reports, was
an action at law to recover money paid for stock which the
plaintiff was induced to purchase by the defendant's fraudu-
lent representations, and it was there held that such action
must be commenced within six years after the money was
paid. In the opinion by Mr. Justice WINSLOW, in speaking
of this cause of action it is said:

"It accrued when the right to commence it was complete.
That right was complete as soon as the fraud was per-
petrated and the money paid. No exception can be inter-
polated in the statute by the courts when its terms are plain.
*Woodbury v. Shackleford,* 19 Wis. 55. But one exception is
named in the statute, viz. that in an action for relief on the
ground of fraud which before the adoption of the Code was
solely cognizable in chancery, the cause of action shall not be
deemed to have accrued until the discovery of the fraud.
. . . This seems to be the only possible conclusion from
mere inspection of the statute. If to support this construc-
tion other ground of argument were necessary, it is afforded
by previous legislation. In the Revised Statutes of 1839 and
1849, it was provided that, in case any person liable to an
action fraudulently concealed the cause of action from the
person entitled thereto, the action may be commenced with-
in six years after the discovery thereof. R. S. 1839,
p. 262, sec. 27; R. S. 1849, ch. 127, sec. 35. In the Revised
Statutes of 1858 this provision was dropped and the ex-
ception substantially as it now exists was substituted. The
intent to change the policy of the law and limit the exception
to actions in equity could not be more plainly expressed."

So that it appears clearly that all actions based on
fraud are embraced in the six-year limitation statute, and
that the statute begins to run from the time of the perpe-
tration of the fraud, with the sole exception noted in sub.

(7), sec. 4222, and that this appears not only upon the face of the statute, but is clarified beyond controversy by the history of the legislation referred to in the *Jacobs Case.*

It is true that, in the absence of some statutory provision to the contrary, the rule that the statute runs from the discovery of the fraud applies, notwithstanding the case is one in which there is a concurrent remedy in a court of common law. But under special statutes in a number of jurisdictions where the "Code system" prevails, the cases in which the statute runs from the time of the discovery of the fraud are those which were formerly solely cognizable in a court of chancery; and in these jurisdictions the running of the statute is not thus postponed in ordinary common-law actions or actions on the case, or in cases over which there was a concurrent jurisdiction in the common-law courts, although in cases which were exclusively within the jurisdiction of equity the statute runs from the date of the discovery. 25 Cyc. 1177, 1178.

The following may be cited as instances of fraud cases in which sub. (7), sec. 4222, is applicable: Suits to reform written instruments on the ground of fraud; to rescind and cancel contracts, set aside sales, deeds, and other transfers of property; to open or set aside fraudulent accounts or settlements; for partition and to quiet title, where plaintiffs to establish their title are under the necessity of invalidating, for fraud, a certificate of final payment for school lands and a patent issued thereon. 2 Cyc. 1178, 1179, 1180, and numerous cases there cited.

It is also contended by *Wegwart* that Conant at the time of the commission of the fraud, being a director of the Woodland Lumber Company, occupied a fiduciary relation to the corporation, that his relationship was that of a trustee to the corporation, and that he was trustee of an express trust, and that therefore the issue on the statute of limitations is ruled by the case of *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571, in which it was held that the statute

of limitations commenced to run from the time the widow knew of the fraud constituting the ground of her cause of action or might have known thereof by the exercise of ordinary care. The position held by an officer or director of a corporation with respect to the corporation was fully argued in *Boyd v. Mutual Fire Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171, was thoroughly considered by the court, and it was there held that the officers and directors of a corporation occupy a fiduciary relation demanding care, vigilance, and good faith, and if they are guilty of misfeasance or malfeasance the corporation may at once bring an action at law to enforce any such violation of duty. It was further held that the general rule of law is that:

"The statute of limitations has no application in the case of an express trust, where there has been no denial or repudiation of the trust. . . . It is not easy to define with exactness the precise relation existing between a corporation and its stockholders, on the one side, and the officers and directors, on the other. The latter are certainly not trustees of an express trust, under the statute mentioned in the opinion. . . . The officers of a corporation have no title to its real property, so that they do not become express trustees under the statute. Neither have they the legal title to either the personal property or the stock of the corporation."

The opinion then sets forth a portion of sec. 1089, 2 Pomeroy, Eq. Jur. (2d ed.), in support of what had theretofore been said. Continuing, the opinion says:

"Neither the corporation nor its governing body, so long as it is a going concern, holds its property in trust for creditors. . . . The trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this court. . . . It seems plain, therefore, that nothing in the prior decisions of this court have established immunity from limitation statutes in favor

of any trusts, other than 'those technical and continuing trusts which are not at all cognizable at law, but fall within the ·proper, peculiar, and exclusive jurisdiction of this [chancery] court.' . . . Their misapplication of funds might at any time have been reached by an action at law by the corporation. The right to sue arose when the act was done."

Counsel for *Wegwart* also refer to the case of *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762, and contend that the cross-complaint comes within the purview of the doctrine laid down in that case. A casual reading of this case will convince one to the contrary. In that case it was held that ignorance of the existence of a cause of action in one's favor, though produced by the fraud of his adversary, does not delay the statute of limitations, unless, according to the law, prior to our code of limitations, the cause of action would be for relief on the ground of fraud under sub. (7), sec. 4222, Stats. The term "cause of action" in sec. 4222 has reference to the violated right, not the mere form of remedy for the violation. If, formerly, such a wrong was remediable either at law or in equity, it is not within the saving grace of the statute. In that case the fraud was perpetrated by an attorney at law, who, after having made collection of a claim for his client, made repeated false representations with respect to his having received the money, as the result whereof the client was prevented from commencing her action within the six-year statutory period. And it was held in that case that:

"If an attorney misrepresent to his client respecting whether he has collected money for the latter, whereby such client, in reasonable reliance thereon, fails to seasonably invoke the law for recovery thereof, thus permitting the right thereto to be extinguished by the statute of limitations, a cause of action accrues in favor of the client against his attorney for damages for such injury." Syllabus, par. 7, p. 98.

The facts in the case of *Ott v. Hood,* 152 Wis. 97, 139
N. W. 762, are entirely dissimilar from the facts in-
volved in the cross-complaint in the instant case, and the
doctrine there held, which is quoted above from the sylla-
bus, has no application here.

Since the decision in the *Boyd Case* the relationship of an
officer or director to a corporation has been definitely and
permanently established and settled, and is now the doctrine
of this court and cannot be disturbed excepting by the act
of the legislature.

It is strenuously contended on the part of *Wegwart* that
sub. (4), sec. 4221, being the ten-year statute, is the only
statute applicable to this cross-complaint, and inasmuch as
it is conceded that ten years had not elapsed from the
time of the perpetration of the alleged fraud, the statutes of
limitations do not operate as against the cause of action set
forth in such cross-complaint. Counsel for *Wegwart* con-
tend that under sub. (4), sec. 4221, it is not necessary that
the cause of action be one solely cognizable by the court of
chancery before the adoption of the Code, but that it plainly
appears from a reading of the statute that it refers to any
cause of action which is cognizable by the court of chan-
cery; that in substance the statutes divide equitable actions
into two classes, namely, those embraced in sub. (7), sec.
4222, and those embraced in sub. (4), sec. 4221. Counsel's
contention in this respect cannot meet with our approval.
It is true that all actions cognizable by a court of equity
except actions of fraud, which are clearly included in sub.
(3), sec. 4222, and in sub. (7), sec. 4222, are embraced in
sub. (4), sec. 4221. As has heretofore been shown, sub.
(7), sec. 4222, is the only provision which embraces equi-
table actions based on fraud which were solely cognizable
by a court of chancery before the adoption of the Code. So
that, while counsel's construction of sub. (4), sec. 4221, is
correct as to equitable actions not based on fraud, such latter

·subdivision does not include actions in fraud whether solely cognizable by a court of equity before the adoption of the Code, or such actions in fraud of which a court of equity had concurrent jurisdiction with a court of law.

A careful reading of the opinion in *Mason v. Henry*, 152 N. Y. 529, 534, 535, 46 N. E. 837, will demonstrate the correctness of our construction. At the time of the perpetration of the alleged fraud in the *Mason Case* the statutes of limitations of New York were substantially like our own statutes, but in 1877 the statutes of that state were amended so that the section in the New York statute which substantially corresponded with sub. (3), sec. 4222, was changed so as to make it read: "An action upon a contract, obligation, or liability, express or implied," and the court in its opinion in the *Mason Case,* referring to this change, uses this language:

"That is to say, where the previous statute had reference to an action upon either a contract, or an obligation, or a liability, the present statute refers to an action upon an obligation or liability founded upon contract. The effect of the changes made by the present Code would clearly seem to be to bring an equitable action, which seeks a judgment for an accounting as against directors or trustees, who have been unfaithful to, or neglectful of, their duties as such, and compelling them to make good, personally, the losses sustained to the corporation, within the provisions of sec. 388; where the limitation of time, for an action not especially prescribed, is ten years."

The history of the legislation referred to in the *Mason Case* is enlightening and clearly establishes that the action in question comes under sub. (3), sec. 4222, Stats., and is governed by the six-year limitation period, which begins to run from the time of the perpetration of the alleged fraud.

The causes of action embraced in the instant case are peculiarly adapted to illustrate the distinctions with respect to the issues on the statutes of limitation involved herein. Plaintiff's cause of action is one in equity, and represents

a typical case coming under the provisions of sub. (4), sec. 4221. The cross-complaint is based on fraud, and is embraced in sub. (3), sec. 4222, unless it can be deemed to come under the exception to said statute provided for in sub. (7), sec. 4222. Such cause of action in the cross-complaint, being one cognizable by a court of law and one of which a court of equity under the pleadings of the cross-complaint may take concurrent jurisdiction, is not such an action founded on fraud as comes within the purview of sub. (7), sec. 4222. Therefore the only statute applicable is sub. (3), sec. 4222.

The contentions of counsel for *Wegwart* on the statute of limitations are therefore overruled, and the judgment of the lower court must therefore be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed, with costs.