LEGLER, Respondent, vs. TYLER and another, Appellants.

*May 7—June 3, 1924.*

*Fraud: Representations of real-estate brokers to client: Promise to resell land acquired by client: Representation that there was a person ready to purchase at stated price: Liability.*

1. A complaint against real-estate brokers which alleged that plaintiff was induced to exchange her farm by reason of a promise of the brokers that they had a buyer for the property which she would take over in the exchange, on which she would realize a named sum net to her above the mortgage incumbrance, does not state a cause of action. p. 241.
2. Such promise was not an assertion on which plaintiff could predicate an action for fraud. p. 241.
3. The situation between the parties was not such as to create a fiduciary relationship whereby the brokers' promise was in the nature of facts which, when relied on, constituted actionable fraudulent representations. p. 241.
4. Representations by the brokers that they had a letter in their office authorizing them to buy the land to be acquired by the plaintiff for another person and that they would get plaintiff her money the next week, are not representations as to a present existing fact sufficient to support an action for fraud, if false and relied upon by her. p. 241.

APPEAL from an order of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Reversed.*

Defendants demurred to the complaint on the ground that it appeared upon the face thereof that it did not state facts sufficient to constitute a cause of action.

The complaint alleged the plaintiff's ownership of 480 acres of farm land in Rock county with an incumbrance thereon of about $23,000; that in 1920 she listed the same with the defendants as real-estate brokers at $160 per acre, with an agreement to pay $1,000 commission in case of a sale. That subsequently an exchange was negotiated through the defendants whereby the plaintiff exchanged her farm for certain real estate in North Dakota and in Lafayette county, Wisconsin, with one Jacobs, and that under the terms of such exchange Jacobs was to give his note for $35,300 secured by a mortgage on the said farm. That the plaintiff was not satisfied with the proposition as originally presented, insisting that she should have as a condition of any exchange at least $10,000 presently paid in cash.

It further alleged:

"That in order to induce this plaintiff to make this exchange of property, so that they thereby would benefit by receiving commissions from both the plaintiff and said Levi Jacobs, the defendants falsely and fraudulently and with intent to deceive and defraud the plaintiff represented to this plaintiff at various times before the said agreement was accepted by the plaintiff and put in writing that they had a buyer for the entire Argyle property that she was to take over from the said Jacobs; that this proposed purchaser would soon arrive in Argyle but was at the present time residing in Texas and was expected to arrive in Wisconsin; that said buyer was coming next week; that they were sure to sell the property; that they had a letter in their office authorizing them to buy it for a brother-in-law in Texas and that they would get the plaintiff her money next week; and in said representations and statements assured this plaintiff that the party from the state of Texas was ready and willing to buy this property so that they would be able

to net her. $10,000 over and above the mortgage incumbrance on said Argyle property."

The complaint also stated that, relying upon said representations and depending upon such statements, the plaintiff, on October 14, 1921, accepted the proposition of the defendants and contracted with Jacobs to make the exchange, to her great loss and inconvenience. That she paid the defendants their commission by giving them her note for $1,200.

That Jacobs took possession of plaintiff's farm and operated the same, but that she was not able to get possession of the Wisconsin property of Jacobs for some time thereafter, and that in the meantime defendants failed to procure the buyer that they were to procure for plaintiff or so as to net her said $10,000 cash.

That the Wisconsin property received from Jacobs has depreciated in value since the exchange and that she has not been able to dispose of the same for any sum sufficient to pay more than $2,000 over and above the mortgage thereon, and that by reason of the defendants' failure to perform their agreement and carry out their promises in selling the said Wisconsin property and to procure for her the sum of $10,000 cash she has been put to a great amount of damages in divers other small transactions that she was obliged to pay in order to hold the said premises, thinking the defendants would procure a buyer as they agreed to do.

That plaintiff's damage was the said sum of $10,000, the $1,200 commission, and $73.50 for revenue stamps.

From an order overruling the demurrer defendants appeal.

For the appellants there was a brief by *Schubring, Ryan & Petersen* of Madison, and oral argument by *William Ryan*.

For the respondent there was a brief by *W. H. McGrath, J. D. Dunwiddie,* and *Ray P. Lichtenwalner,* all of Monroe,

and oral argument by *Mr. Lichtenwalner* and *Mr. Dunwiddie.*

ESCHWEILER, J.   Giving the most favorable construction that we can to this complaint, we nevertheless fail to find a cause of action therein stated.

No fraud or collusion between Jacobs, with whom the plaintiff made the exchange of property, and the defendants is alleged or suggested.   The delay in plaintiff's obtaining immediate possession of the property of Jacobs for which she exchanged hers is not chargeable to defendants.

That defendants would obtain in the future a purchaser of the property acquired by plaintiff in the exchange was not an assertion upon which plaintiff can predicate an action for fraud.   *Miley v. Heaney,* 168 Wis. 58, 73, 169 N. W. 64; *Davis v. Reynolds,* 107 Me. 61, 77 Atl. 409; *Hazlett v. Wilkin,* 42 Okla. 20, 140 Pac. 410.

Plaintiff also asserts that the situation between the parties was such as to create a fiduciary relationship whereby the opinions or promises by the defendants as to the possible future sale or exchange of plaintiff's newly-acquired property made such opinions and promises in the nature of facts which, when relied upon by plaintiff, came within the field of actionable fraudulent representations.   We cannot accept such view.

Stress is laid by plaintiff upon the proposition that the allegation that the defendants represented to plaintiff "that they had a letter in their office authorizing them to buy it for a brother-in-law in Texas, and that they would get the plaintiff her money next week," is a representation as to a present existing fact, namely, that they then had a valid and binding written agreement or offer to buy, and if false and relied upon is sufficient to support a cause of action for fraud.

We deem such, however, and especially when read in

connection with the rest of the complaint, as entirely too unsubstantial, coupled as it is with the assertion as to the future, to come within the logic of the theory upon which this class of cases is based or within the letter or principle of any of the decisions on this subject. The demurrer, therefore, should have been sustained.

*By the Court.*—Order reversed.