LAWRENCE R. NASH, Corporation Counsel, Wood County *Page 145 
You have requested my opinion concerning two questions which have arisen, under sec. 66.29 (5), Stats., in the course of the letting of a contract by Wood County for the erection of a new county hospital. Your questions are based on the following facts:
Upon opening the bids, the county hospital building committee found that the apparent low plumbing bidder was Towne, Inc., with a base bid of $233,733. However, the next day Towne, Inc., advised the county, by letter, that its bid was in error and that there was a transposition of figures, in that Towne, Inc., had intended to bid $323,733 rather than the $233,733. Towne, Inc., requested that it be relieved of its bid and that its 5% bid bond in the sum of $11,686 be released. The county nevertheless tendered the contract to Towne, Inc., in the sum of $233,733, which Towne, Inc., refused to sign. The plumbing contract was then apparently awarded to the next low bidder. The conditions under which bids were submitted contained a provision requiring that the bids be firm for a specific period of time.
Section 66.29 (5), Stats., provides as follows:
"(5) CORRECTIONS OF ERRORS IN BIDS. Whenever any person shall submit a bid or proposal for the performance of public work under any public contract to be let by the municipality, board, public body or officer thereof, who shall claim mistake, omission or error in preparing his bid, the said person shall, before the bids are opened, make known the fact that he has made an error, omission or mistake, and in such case his bid shall be returned to him unopened and the said person shall not be entitled to bid upon the contract at hand unless the same is readvertised and relet upon such advertisement. In case any such person shall make an error or omission or mistake and shall discover the same after the bids are opened, he shall immediately and without delay give written notice and make known the fact of such mistake, omission or error which has been committed and submit to the municipality, board, public body or officers thereof, clear and satisfactory evidence of such mistake, omission or error and that the same was not caused by any careless act or omission on his part in the exercise of ordinary care in examining the plans, specifications, and conforming with the provisions of this section, and in case of forfeiture, shall not be entitled to recover the moneys or certified check forfeited as *Page 146 
liquidated damages unless he shall prove before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission he was free from carelessness, negligence or inexcusable neglect."
Based on the foregoing fact situation and the provisions of sec. 66.29 (5), Stats., you first inquire as follows:
"Does Wood County have the discretion to compromise and settle or relieve a bidder from an erroneous bid if the county by inquiry determines the mistake, error or omission is the type for which relief should be granted, or is the statute mandatory so as to require a bidder to make such proof `before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited?'"
In the absence of statute, bids normally cannot be changed in substance after presentation and bid opening. McQuillin, Mun.Corp. (3rd Ed.), § 29.68, p. 407. Although sec. 66.29 (5), Stats., provides some relief from the effect of mistakes made by bidders, it makes no provision for the negotiation or compromise of an erroneous low bid. Therefore, the options normally open to a county, under said statute and the specific circumstances you describe, are: to grant relief to the apparent low bidder if he satisfies the requirements of sec. 66.29 (5), by allowing him to correct his bid; to declare a bid bond forfeiture and sue for damages, if the apparent low bidder refuses to perform at the corrected figure or fails to meet the requirements of sec. 66.29 (5) which would allow a correction, and refuses to perform; or to reject all bids and readvertise for bids.
The statutory language now found in sec. 66.29 (5), Stats., was first enacted by ch. 395, Laws of 1933. It appears that the provision may have been a legislative response to Gavahan v.Village of Shorewood (1930), 200 Wis. 429, 432, 228 N.W. 497, where the court had held as follows:
"We are of the opinion that when a bidder who has made a mistake in his computations or mistakenly omitted items from consideration in making his estimates in good faith asks to withdraw his bid for correction before the bids are opened, he is entitled to withdraw it; and that if in such case the municipality *Page 147 
refuses to allow him to withdraw it, he is entitled to recover his deposit. It may be that such a rule will allow dishonest bidders to claim mistake when there is none in fact. And it will require readvertisement where there is only one bid, if the bidder does not file a corrected bid. But the city is in no worse position than it would be had no bid been filed at all, and here there were other bids so readvertisement would not have been necessary. . . ."
The newly enacted sec. 66.29, Stats., laid to rest the basic question as to the legal rights and responsibilities of a bidder who discovered his error prior to bid opening, i.e., the bid "shall be returned to him unopened" and he may not correct his bid or further participate in the bidding unless the contract is readvertised and relet. Under such circumstances, of course, it is not known or important whether the bidder's error, omission or mistake was or was not free from carelessness, negligence or inexcusable neglect.
Questions still existed, however, as to the options available when a bidder discovered his error after bid opening. These questions were at least partially answered by Krasin v. Villageof Almond (1940), 233 Wis. 513, 290 N.W. 152, 126 A.L.R. 832. In that case the total bid on the final-estimate sheet had been "misread" from an adding machine tape, because a worn ribbon in the machine made a "6" appear to be "0." Applying the provisions of sec. 66.29 (5), Stats., the court concluded that the village should have excused such mistake and allowed a correction of the bid, stating, at p. 517:
"Sub. (5) is headed `Corrections of errors in bids.' This heading manifestly contemplates that corrections of errors may be made in proper cases, and this would seem to imply that a bid when properly corrected may stand as a bid. Under this concept of the purpose of the statute, the village should under the facts found by the trial court, which are well supported by the evidence, have permitted substitution of the correct amount in the bid."
At p. 518:
"The statute next provides that a bidder making a mistake in his bid shall submit `clear and satisfactory evidence' of such mistake and that it was not caused by his carelessness `in examining the plans, specifications, and conforming with the provisions of this section.' * * * In showing just how his mistake occurred the *Page 148 
plaintiff showed that it did not result from any carelessness in examining the plans and specifications or in conforming to the statute as thus far stated. The trial court considered, and so do we, that the plaintiff fully complied with the statute up to this point."
And finally, at p. 519:
"* * * The trial court manifestly considered such neglect of the plaintiff as was involved, if any, as excusable, and the facts as stated preceding the opinion support that conclusion, if ever neglect may be excusable, as the statute manifestly contemplates it may be."
It is apparent from Krasin that if an apparent low bidder, who discovers his error after bids are opened, gives proper notice of his mistake and submits "clear and satisfactory evidence of such mistake and that it was not caused by his carelessness in examining the plans, specifications, and conforming with the provisions of [sec. 66.29]," the governmental entity requesting the bids should allow the bidder to correct his bid. Normally, if the bid is otherwise in order and still remains the low bid after the adjustment necessary to correct the mistake, the bid should be accepted.
On the other hand, if the governmental entity requesting the bids is not satisfied that the notice and other submittals of an apparent low bidder support a claim of mistake under sec. 66.29 (5), Stats., such bidder's bid bond should be declared forfeit. Likewise, assuming that the period of time during which bids are to remain firm has not expired, if a successful low bidder refuses to perform on the basis of his corrected bid, his bid bond should be declared forfeit.
You further inquire as follows:
"If it be determined that a bidder is entitled to relief from a bid pursuant to Section 66.29 (5) would the county still be entitled to damages to the extent it could prove reasonable and necessary expense incurred by the county resulting from the erroneous bid?"
Assuming, as your question does, that it is determined that a bidder is entitled to relief from his erroneous bid under the provisions of sec. 66.29 (5), Stats., in the absence of any facts in addition to those presented here, it is questionable whether any basis for an actionable claim for damages would survive such a *Page 149 
determination. As stated in McQuillin, Mun. Corp. (3rd Ed), § 29.82, at p. 444-445:
"§ 29.82. Mistake as affecting obligation of bidder. If there is an honest mistake in the bid on the part of the contractor, due to clerical errors, not intended to mislead the municipality or any other bidder, and the errors were known to the municipal officers before the contract was awarded, a bidder refusing to accept the contract who is sued for the difference between the price of his bid and the sum paid by the municipality for carrying out the contract may set up the error as a defense. . . ."
More specifically, if the county concluded that Towne, Inc., was entitled to relief from its erroneous bid and therefore that the bid should be corrected to read "323,733, I fail to discern what damages would exist, unless such corrected bid would still be the low bid and Towne, Inc., would refuse to perform even at the corrected figure. You advise, however, that at the corrected figure Towne, Inc.'s bid would no longer be the low bid. Under such circumstances, presumably, the contract would not even be offered to the company.
RWW:JCM